*FRANK J. THOMPSON. ET AL. V. CITIZENS NATIONAL BANK OF ADAMS, N. Y.

1. CONTRACT CONSTRUED BY LAW WHERE MADE, PLEADING, EVIDENCE, ETC., BY LAW OF FORUM.
   A note made in a foreign state should be construed by the law of the state where made, but questions of procedure and pleadings, evidence and burden of proof are determined by the law of the forum where the action may be brought.

2. DEFENSE TO A NOTE AGAINST ORIGINAL PAYEE BEING PROVEN, BURDEN OF PROVING DUE COURSE RESTS ON ENDORSEE.
   Under Gen. Code 8110, in an action on a note by an endorsee, when a defense is established as against the original payee, the burden is upon the holder to show that he or someone under whom he claims acquired the title as a holder in due course.

*Affirmed, no op., *Thompson v. Bank,* 82 O. S. 446.

3. ALL THE ELEMENTS OF FRAUD BY PAYEE OF NOTE MUST BE PLEADED BY MAKER TO BE AVAILABLE AS A DEFENSE AGAINST ONE CLAIMING TO BE A HOLDER IN DUE COURSE.

> That a note was procured to be given by the fraud of payee upon maker, to be available as a defense in an action on the note brought by one claiming to be a holder in due course, all of the material elements necessary to be proven to establish such fraud must be pleaded specifically by the maker.

[Syllabus approved by the court.]

ERROR to Lucas common pleas court.

*G. W. Kinney,* for plaintiff in error.

*Chittenden & Chittenden,* for defendant in error.

WILDMAN, J.

The bank named brought suit in the court below against plaintiffs in error upon a promissory note, and the court, after evidence had been submitted, sustained a motion to direct the jury to render a verdict against the defendants, and judgment was entered thereon for about $1,100.

The note was originally given by the plaintiffs in error, Frank J. Thompson and Helen M., his wife, to a firm called Henry Stevens & Son, who seem to be residents of some place in New York, and were not made parties to the action. The bank claims to have obtained the note before maturity in due course of business for a valuable consideration, and to be entitled to all the rights of a holder unaffected by claimed defenses against the original payees. Since the decision of the case of *Davis v. Bartlett,* 12 Ohio St. 534 [80 Am. Dec. 375], the rule in Ohio as to the burden of proof in suits upon negotiable paper by endorsees seems to have been substantially settled, until the adoption of certain statutory provisions, which, as we read them, have made a slight change.

There can be no question here that although this note was made in the state of New York, and to determine the original rights of the parties, should be construed probably by the law of the state where made, when we are determining questions of procedure and pleadings, evidence and burden of proof, we must rely upon the statutes of our own state, the forum in which the suit is instituted.

The answer of the defendant denies the ownership of the

Thompson v. Bank.

note in the bank; denies also that the bank is the holder of the paper. But when we come to examine the evidence and arguments of counsel, there seems to be no contention that the bank did not have the note in its manual possession at the time of instituting the suit. It is claimed, however, by the defendants that they had a valid defense to the note as against the original payees, Henry Stevens & Son, and not only that the note was invalidated in the hands of such payees, but that it was placed in the possession of the bank merely for the purpose of suit and that the bank is not the real party in interest.

Gen. Code 8135 as to negotiable instruments provides that, "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery. If payable to order, it is negotiated by the indorsement of the holder completed by delivery."

The note so given to Henry Stevens & Son bears their endorsement and guarantee of payment and is found at the beginning of the suit in the possession of the bank. The officer of the bank presenting it, when called as a witness, testified that it had been in the possession of the bank at all times from the date of its ostensible transfer to the bank as shown by the endorsement.

Gen. Code 8136 provides:

"The endorsement must be written on the instrument itself, or upon a paper attached thereto. The signature of the indorser without additional words is a sufficient indorsement."

There are some other provisions defining the rights of the parties, until we arrive at Gen. Code 8157[1] (R. S. 3172x), where we have these definitions:

"A holder in due course" (the expression in the statute being a sort of ellipsis, I suppose, for the expression "a holder in due course of trade or due course of business,") "is a holder who has taken the instrument under the following conditions:"

We find then four conditions essential to the constituting of a "holder in due course."

"1. That it is complete and regular upon its face." This note is such.

---

[1]The Gen. Code states this: "One is a holder," etc.—Ed.

Lucas County.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Clause second, to which I have referred, has a reference to notice of previous dishonor. There is no claim of previous dishonor here. There is no evidence offered by the defendant in the answer, to which I will later refer, to justify the submission to the jury of the question as to whether the transfer was really made in good faith or not. But the fourth clause is as essential to the definition as the others, "that at the time it was negotiated to him," (or in this case to the bank), he, (or in this case, it), "had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." In other words, the bank is not a holder in due course if at the time the note was negotiated the bank had any notice of any infirmity in the instrument or defect in the title.

Now Gen. Code 8160, provides:

"The title of the person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Gen. Code 8161 is:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Gen. Code 8163, omitting some of the others, is as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable."

Gen. Code 8164 is the rule as to the burden of proof, which

Thompson v. Bank.

is contrary to the rule originally enunciated in the case of *Davis v. Bartlett, supra,* I will read it.

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective," and we have already had the definition that if a note is obtained by fraud the title is defective, as provided in Gen. Code 8160, "the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

In other words, if a defense is established against the original payee, then the holder who claims to be a holder in due course, in order to substantiate that claim, must prove the fourth condition to which I have referred as embodied in Gen. Code 8157; that is, that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Taking the sections together, the burden, after the establishing of a defense against the original payee, is shifted to the holder of the instrument to prove as a negative fact lack of knowledge of any infirmity in the instrument or defect of the title of the person negotiating it. He must show that he has no knowledge of the defense so established.

And this brings us at once to the question whether any defense has been shown here against the original payees of the instrument, Henry Stevens & Son.

It is not necessary to go to the evidence to determine whether or not there is any tending to establish such a defense which should have been submitted to the jury, if no defense has been effectively pleaded against the note; that is, if the defendant has not asserted facts which would constitute a defense if the note were being sued upon by the original payees, Henry Stevens & Son. We have examined this answer with considerable care, reading it a number of times, examining in detail all its paragraphs, and we are thoroughly satisfied that it fails to assert a defense against the note in suit even if it were sued upon by Henry Stevens & Son, the payees, instead of the bank.

I invite attention to the attempted claim of the defendants against Stevens & Son. Their defense is that the note was given in consideration of the purchase by them of certain Holstein

Fresien cattle, and that at the time when they received the cattle one cow supposed to be of considerable value was diseased with tuberculosis; that not long after the purchase, the cow died. A post mortem examination made by veterinary surgeons, or a veterinary surgeon, disclosed the fact of the tuberculosis. A calf coming from the same cow was also diseased in the same way, and certain other stock kept in a barn where this cow had been became infected. The defendants Thompson claimed that they were entitled to damages against Stevens & Son in an amount in excess of the entire amount of this note which they had given to Stevens & Son and which had been transferred to the bank.

There is no claim in this answer of a warranty, either express or implied. The answer may be searched in vain to find any elements of a contract that Stevens & Son were to make good any loss by reason of unsoundness of the cow or any of these cattle, if she or they should prove to be unsound. The defendants, on the contrary, have relied upon a case of claimed fraud or deceit in the sale. They say that representations were made by at least one of the members of the firm of Stevens & Son that the cattle were free from disease. The burden is on the defendant of course to establish this defense if properly pleaded, but in the first instance the burden is upon them to assert in their pleading all the essential facts to constitute a case of fraud. We find no averment anywhere that the statements made by one of the Stevens firm that the cattle were sound were fasely and fraudulently made. It is true it is said that the statement was untrue; but there is no averment anywhere of fraudulent intent. There is no averment of knowledge on the part of Stevens & Son that the representations were untrue. There is no averment that the cattle · had shown any symptoms of tuberculosis at the time of the sale by Stevens & Son to Thompson. There is no averment that Stevens & Son had any such knowledge of the disease of tuberculosis as would have enabled them to diagnose the condition of the cattle if symptoms had been disclosed. There is no averment that they had had the cattle for any particular length of time such as would raise the inference that they had any knowledge of such condition. There is no averment that the statements were wantonly or recklessly

Thompson v. Bank.

made as to a matter in regard to which they had no knowledge or belief. And without averments equivalent to these matters to which I have referred, or some of them, the answer in our judgment manifestly fails to assert a defense. In addition to all these things there is no averment in this answer that the defendants have tendered back to Stevens & Son the cattle, or any of them. True, they might not have been called upon to tender back the corpse of this cow after the post mortem or before, but it seems so far as the pleadings disclose, and indeed the fact appears to be supported by the evidence, that they kept the other cattle. It is not claimed that all of them were worthless, and there is no principle better settled than that there can be no rescission of such a contract as this without ability and readiness to place the other party in the position which he occupied prior to entering into the contract by both. Equity will not permit Thompson and his wife to remain in possession of the property purchased and at the same time rescind and set aside the contract and absolve themselves from liability on the note which they have given for the purchase price.

It would seem hardly necessary to cite authorities upon a proposition so simple as this, but without reading from it I cite a case which in some of its bearings is quite illustrative of the rights of the parties here. It is entitled *Ohio Forging Co.* v. *Lamb,* 9 Dec. Re. 199 (11 Bull. 190), decided by the district court of Hamilton county a number of years ago. Our judgment is that the defendants have asserted in their pleadings no facts sufficient to constitute a defense against the note even in the hands of the original holders. It cannot be claimed that the bank, the endorsee, is not a holder in due course, because there is no flaw in the title of the original payees. The bank does not have to prove its ignorance of fraud if there be no fraud or if none be pleaded as against the original holders of the paper.

The court below was not in error in instructing the jury to render a verdict for the plaintiff or in rendering a judgment upon that verdict when so returned. The judgment will be affirmed without penalty.

**Kinkade, J.,** concurs.